IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-00911-WYD-BNB

KELLIE CURTIS,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
an Illinois Insurance Company,

     Defendant.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

THIS MATTER comes before the Court on Defendant's Motion for Summary

Judgment. At issue are Plaintiff's claims against Defendant for breach of contract and

bad faith breach of insurance contract. Defendant bases its argument for summary

judgment on provisions in the Colorado Auto Accident Reparations Act, COLO. REV.

STAT. § 10-4-706. For the reasons stated below, Defendants' Motion for Summary

Judgment is denied.

Defendant also filed a Motion to Strike Affidavits Submitted by Plaintiff in

Response to Defendant's Motion for Summary Judgment. For the reasons stated

below, this motion is granted.

## II.   BACKGROUND

This case arises from an accident which occurred on March 8, 2002 in the City of Fort Collins, Colorado.  Plaintiff sought benefits under an automobile policy issued to her by State Farm Mutual Automobile Insurance Company ("State Farm"), policy # 40-8872 B02-05, claim # 06-5493-363.  Defendant paid for some of Plaintiff's treatments but eventually refused to pay for further treatment.  After Defendant refused to pay for such medical treatment Plaintiff brought suit, alleging claims for breach of contract and bad faith breach of an insurance contract.

Plaintiff filed her Complaint on March 9, 2007 in the Boulder County District Court and the case was removed to this Court on May 3, 2007.  Defendant filed its Motion for Summary Judgment on June 17, 2007.  Plaintiff filed a response in opposition to the motion on August 31, 2007.  This response was stricken and Plaintiff was granted leave to refile her response in compliance with my Practice Standards. Plaintiff refiled her response on September 17, 2007.  Defendant filed a reply on October 2, 2007.  On October 5, 2007, Defendant filed a Motion to Strike Affidavits Submitted by Plaintiff in Response to Defendant's Motion for Summary Judgment. Plaintiff filed a response to the motion to strike affidavits on November 11, 2007, and a reply was filed November 19, 2007.  These matters are before me.

## III.   FACTS

Taken in the light most favorable to the Plaintiff, the facts are as follows.  This case arises out of an automobile accident on March 8, 2002.  Plaintiff received injuries in this accident and sought benefits under the Personal Injury Protection (PIP)

provisions of an insurance policy issued to her by State Farm, policy # 40-8872 B02-06, claim # 06-5493-363. Pursuant to the terms of this policy, State Farm is only obligated to pay PIP benefits for medical and rehabilitation expenses for bodily injury that was caused by Plaintiff's March 08, 2002 accident. *See* Def.'s Mot. for Summ. J. at ¶ 5; Pl.'s Resp. at 4.

Plaintiff suffered a jaw injury as a result of the accident and received treatment from Dennis Brenkert, D.D.S. Specifically, she received splint therapy, medication and chiropractic treatment from May 05, 2002 through August 12, 2002, and Defendant paid for these procedures. *See* Def.'s Mot. for Summ. J. at ¶¶ 6-8; Pl.'s Resp. at 5. State Farm also paid for jaw surgery costing $13,000.00 which was performed by Ole Jensen, D.D.S., M.S., P.C. on January 21, 2003, to correct bilateral displaced discs of Plaintiff's TMJ. *See* Def.'s Mot. for Summ. J. at ¶ 9, Pl.'s Resp. at 6.

The treatments at issue occurred beginning in August 2003, when Defendant received notice from Dr. Brenkert that he was recommending further treatment, including full orthodontic treatment and a surgical setback of Plaintiff's lower jaw bone. Def.'s Mot. for Summ. J. at ¶ 10, Pl.'s Resp. at 6. Pursuant to COLO. REV. STAT. § 10-4-706(b), Defendant scheduled an Independent PIP Medical Examination ["PME"] with Louis F. Peede, D.M.D. to review Dr. Brenkert's opinion that Plaintiff needed orthodontic and jaw reconstructive surgery.

In his PME, Dr. Peede opined that the first January 21, 2003 surgery was necessary and accident related but that the orthodontic treatment and reconstructive surgery of the lower jaw proposed by Dr. Brenkert were not accident related but were

rather treatments for a preexisting condition caused by a skeletal deformity.  Def.'s Mot. for Summ. J. at ¶¶ 11-12.  However, Dr. Peede also states in the PME that:

> The temporomandibular joint disease that this patient has suffered is probably long-standing in nature and pre-existing the accident, however, *it was aggravated by accident to the point where* the patient states pain became an issue and the temporomandibular joint surgery was then performed to alleviate that pain. However, it is my opinion that she has probably had a displaced disk, or other type of internal derangement of the joints for many, many years, and this was associated with her long-standing history of popping within the temporomandibular joints."

*See* Ex. F to Def. Mot. for Summ. J. at 3 (emphasis added).

Plaintiff, her counsel and Dr. Brenkert all received a copy of Dr. Peede's PME report.  Plaintiff did not request a second PME report pursuant to the statute.  Def.'s Mot. for Summ. J. at 14, 22; Pl.'s Resp. at 12, 13.  Plaintiff appears to have only submitted two additional items to the Defendant—an October 15, 2004 letter from Dr. Jensen and a January 13, 2005 letter of medical necessity from Dr. Jensen.  The October 15, 2004 letter to State Farm provided, "Kellie Curtis is now status post TMJ surgery for correction of accident caused injury. The second phase of surgery to fix damage *caused by the accident*, [sic] will move the jaw forward and stabilize the occlusion and the joint."  *See* Pl.'s Resp. at 13 and Ex. 1 to Pl.'s Resp (emphasis added).  The January 13, 2005 letter from Dr. Jensen was a letter of medical necessity which was written "to reinforce [his] request for the purchase or rental of a cold-therapy unit [...] and accessories including a compression wrap, water circulating pads."  *See* Ex. G to Def.'s Mot. for Summ. J.  The products requested by Dr. Jensen in his letter of medical necessity were to be implemented "immediately following surgery."  *Id.*

Plaintiff had jaw reconstructive surgery performed on January 18, 2005. Defendant relied on portions of Dr. Peede's PME which stated that the surgery was not accident related, but was to treat a developmental pre-existing condition. Accordingly, Defendant did not pay for that surgery or any treatment related to that surgery.

Plaintiff submitted two affidavits with her response. The first is from Shawn DeHerrera, "a former personal injury protection benefits adjuster", who opined that State Farm did not meet the standard of review of PIP claims adjusters to conduct good faith investigative efforts prior to denial of the claims. *See* Pl.'s Resp. at 8; Ex. 3 to Pl.'s Resp. Plaintiff also submits an affidavit of Andrew Lake, a "personal injury consultant," who opines that State Farm "failed to fairly adjust the PIP claims in dispute due to their employing a technique know as 'spotlighting,' in which State Farm sought to avoid or reduce their payment of PIP benefits by calling attention to the Plaintiff's pre-existing condition or predisposition to injury." *See* Pl.'s Resp. at 10, Ex. 4 to Pl.'s Resp.

IV.     ANALYSIS

        A.     Motion to Strike Affidavits

Defendant moves to strike the affidavits submitted by Plaintiff in response to her motion. Affidavits submitted in opposition to a summary judgment motion must be made on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. Fed. R. Civ. P. 56(e); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). I find that the affidavits submitted by Plaintiff do not meet these requirements.

As indicated earlier, Plaintiff submitted two affidavits in support of her response. I find that these affidavits are not based on personal knowledge and are replete with legal conclusions, opinions, self-serving or conclusory statements, and statements that are not supported by any corroborating evidence. *See Frontage Solutions USA, Inc. v. Newroad Software*, 505 F. Supp. 2d 821 (D. Colo. 2007) (affidavits with factually unsupported conclusions and self-serving assertions not corroborated by reference to any record evidence or contradicted by the other evidence are inadmissible).

Moreover, Plaintiff has not shown that the individuals who submitted the affidavits are competent to testify to the statements contained therein. Indeed, as to Shawn DeHerrera, she does not reveal any medical education or experience which would make her competent to testify as to Plaintiff's medical condition. Further, the fact that as a PIP adjuster she paid claims with similar injuries, facts and circumstances is simply irrelevant. The issue in this case is whether State Farm's reliance on the PME was a breach of the terms of the insurance policy or bad faith. Ms. DeHerrera does not allege that she paid similar claims in contradiction to the results and opinions contained in a PME. More importantly, whether Ms. DeHerrera would have reached a different conclusion is not evidence of a breach or bad faith in this case.

As to Andrew Lake, his resume does not reveal any medical education or experience. He also does not appear to have any experience adjusting insurance claims of any kind, including PIP claims. Despite this, Mr. Lake offers opinions regarding State Farm's handling of Plaintiff's claim and the cause of Plaintiff's injuries. The fact that Mr. Lake worked as a paralegal for personal injury attorneys does not

necessarily qualify him as an experienced personal injury claims consultant. I cannot find from his affidavit and resume that he has such experience. Finally, even if these two witnesses may be qualified as expert witnesses, they may not state legal conclusions or opinions on an issue of law. *See A.E. By and Through Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991). Mr. Lake testified improperly to several legal conclusions.

Accordingly, I grant Defendant's motion to strike these affidavits and do not rely on them in any manner in deciding Defendant's motion. I also deny Plaintiff's request under FED. R. CIV. P. 56(f) for additional discovery or to supplement her affidavits. Plaintiff has not shown how the desired time would enable her to rebut the movant's allegations as required by Rule 56(f). *See Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993). Further, Plaintiff did not provide an affidavit indicating why additional discovery is necessary or what specific facts she believes will be discovered that would be pertinent to the summary judgment motion. Even without these affidavits, however, I find that there are genuine issues of material fact that require the denial of Defendant's summary judgment motion.

B.      Defendant's Motion for Summary Judgment

1.      Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing that no

genuine issue of material fact exists is borne by the moving party.  *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

"In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the ultimate procedural question of whether judgment as a matter of law is appropriate."  *Haberman v. The Hartford Ins. Group*, 443 F.3d 1257, 1264 (10th Cir. 2006) (citing *Gust v. Jones*, 162 F.3d 587, 593 (10th Cir. 1998)).  Therefore, the substantive law of Colorado applies and governs the substantive claims, but federal law governs the ultimate question of whether summary judgment is appropriate.

2.    Breach of Contract Claim

The critical issue is whether the January 2005 surgery and related treatment were accident related.  Defendant contends that the treatment was not accident related.

Plaintiff disputes this, arguing that the tortfeasor takes the plaintiff as she is under the "thin skull" doctrine and that her later surgery was necessary because any existing problems that Plaintiff had were at least aggravated by the accident.

"The 'thin skull' doctrine provides that a negligent defendant is liable for harm resulting from negligent conduct even though the harm was increased by the particular plaintiff's condition at the time of the negligent conduct." *State Farm Mutual Automobile Ins. Co. v. Pfeiffer*, 955 P.2d 1008, 1010 (Colo. 1998). This is because "a tortfeasor must accept the victim as the victim is found." *Id.* The Colorado Supreme Court has held that "in appropriate circumstances," a trial court may provide a 'thin skull' jury instruction in an action for breach of contract for PIP benefits." *Id.* at 1011-12.

Specifically, *Pfeiffer* noted that a "thin skull' instruction is appropriate in tort cases when the defendant seeks to avoid or reduce liability by employing a technique known as 'spotlighting,' in which the defendant calls attention to the plaintiff's pre-existing conditions or predisposition to injury and asserts that the plaintiff's injuries would have been less severe had the plaintiff been an average person." *Id.* However, *Pfeiffer* noted that the applicability of the "thin skull" instruction in a contract case for breach of an automobile insurance agreement for no-fault PIP benefits was an issue of first impression for the court. *Id.* As to that issue, *Pfeiffer* held that while a defendant in a breach of contract action generally should not be responsible for unforeseeable consequences of the breach, damages arising from a breach of contract action for PIP

benefits are different.  *Id.* at 1011.[1]  Thus it found that "[w]hen an insurer attempts to avoid or reduce liability by 'spotlighting' the insured's pre-existing conditions, a thin-skull instruction furthers the No-Fault Act's policy of fully compensating the victim."  *Id.* In other words, *Pfeiffer* held that a thin-skull instruction was appropriate in such circumstances.  *Id.* at 1011-12.

I find that there is a genuine dispute of material fact as to whether the treatments at issue were caused by an aggravation of a pre-existing condition such that they would be covered under a thin skull jury instruction.  I also find that there are genuine issues of material fact as to whether Defendant in this case attempted to avoid liability for the January 2005 surgery by "spotlighting" Plaintiff's pre-existing condition.  While Plaintiff's statement of facts leaves much to be desired in terms of clarity, she points to statements by Dr. Jensen that "the second phase surgery to fix damage *caused by the accident*, will move the jaw forward and stabilize the occlusion and the joint."  Ex. 1 to Pl.'s Resp. (emphasis added).  Though not specifically mentioned by the Plaintiff, there is also language in Dr. Peede's PME stating that the accident aggravated her developmental pre-existing conditions and skeletal deformations.  *See* Ex. F to Def.'s Mot. for Summ. J. at 3.  Further, it is undisputed that Defendant attempted to avoid liability by pointing to Plaintiff's pre-existing condition.

---

[1]  That is because "damages for a breach of contract for PIP benefits are analogous to damages arising from the commission of a tort because an insurance contract for PIP benefits always involves an unforeseeable amount of money."  *Id.*  "Although the limits of the policy are within the contemplation of the parties, neither the insured nor the insurer can anticipate the precise amount of benefits to which the insured might be entitled were an automobile accident to occur."  *Id.*  "In addition, unlike a policy for life insurance or health insurance, a policy for PIP benefits due to injury arising out of an automobile accident does not contain exclusions for pre-existing conditions."  *Id.*

Based on the foregoing, I find that there is a genuine dispute as to whether the surgery and treatment at issue in this suit were necessary and accident related. Accordingly, there are genuine issues of material fact as to whether Defendant breached the insurance policy by not paying such benefits. Defendant's Motion for Summary Judgment is thus denied as to the first claim for breach of contract.

3.    Bad Faith Breach of an Insurance Contract Claim

Defendant also moves for summary judgment on Plaintiff's claim for bad faith breach of insurance contract. Under Colorado Law, "an insurer's liability for bad faith breach of insurance contract depends on whether its conduct was appropriate under the circumstances." *Goodson v. American Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004). "Every contract in Colorado contains an implied duty of good faith and fair dealing." *Id.* (citing *Cary v. United of Omaha Life Ins. Co.* 68 P.3d 462, 466 (Colo. 2003). There must be sufficient evidence to establish that the insurer acted (1) unreasonably under the circumstances and (2) with knowledge or reckless disregard of the validity of the insured's claim. *Id.*

Defendant has presented evidence showing that it complied with the provisions of COLO. REV. STAT. 10-4-706(6)[2] by seeking a PME report from Dr. Peede to determine whether the treatments at issue were accident related. The undisputed evidence shows that Defendant forwarded this PME to Plaintiff and her counsel and advised that

---

[2]  I note that The Colorado Auto Accident Reparations Act was repealed effective July 1, 2003. The parties do not appear to dispute that the Act is nonetheless applicable to Plaintiff's claims because they relate to her March 2002 accident, which occurred prior to repeal of the Act and while her Policy provided for Personal Injury Protection coverage.

Plaintiff could seek a second PME under the statute. Defendant also advised Plaintiff that it would consider any new objective evidence submitted showing that the treatments were accident related, and it forwarded what information it received from the Plaintiff to Dr. Peede. Dr. Peede opined that the treatments at issue were not accident related.

The Colorado Auto Reparations Act does not preempt the common law tort remedy for bad faith breach of an insurance contract. *Farmers Group, Inc. v. Williams*, 805 P.2d 419, 426 (Colo. 1991). The statute provides that the opinion of the PME is "presumed to be correct, but such presumption may be rebutted by a preponderance of the evidence." COLO. REV. STAT. § 10-4-706(6)(h).

In this case, while the ultimate conclusion of the PME and Dr. Peede was that PIP benefits were not proper as the injuries were not accident related, there is also language in the PME stating that the accident aggravated her developmental pre-existing conditions and skeletal deformations. This could support liability on the part of Defendant under the thin skull doctrine. Further, as noted earlier, Plaintiff submitted evidence from Dr. Jensen which appeared to indicate that the second phase surgery to fix damage was caused by the accident. Ex. 1 to Pl.'s Resp. Thus, Plaintiff has submitted some evidence to rebut the PME's overall conclusion. Further, while she did not seek a second PME, the Act does not require the plaintiff to seek such a PME in order to rebut the presumption of correctness. *See id.*

I find from the foregoing that there are genuine issues of material fact as to the claim for bad faith breach of an insurance contract. Specifically, given the arguably

conflicting statements in Dr. Peede's PME and the statement of Dr. Jensen, I find that there are genuine issues of material fact as to whether State Farm acted unreasonably under the circumstances in denying benefits and whether it acted with knowledge or reckless disregard for the validity of Plaintiff's claim.

V.    CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment is **DENIED**.

Dated:  March 24, 2008

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge